STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT, v. THE UNION COUNTY PARK COMMISSION, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT, AND HARTSHORN ESTATE, ETC., *ET AL.*, DEFENDANTS.

Argued October 24 and 25, 1966 — Decided December 5, 1966.

247

*Mr. William J. McCormack,* Deputy Attorney General, argued the cause for plaintiff-respondent, State of New Jersey, by the State Highway Commissioner (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Avrom J. Gold,* Assistant Attorney General, of counsel and on the brief; *Mr. Philip A. Donnelly,* Deputy Attorney General, of counsel).

*Mr. William R. Gilson* argued the cause for defendant-appellant (*Messrs. Kentz, Kentz & Gilson,* attorneys).

The opinion of the court was delivered by

HANEMAN, J. The State of New Jersey, by the State Highway Commissioner (the State Highway Commissioner) filed a complaint seeking to condemn for highway purposes lands owned by The Union County Park Commission (Union Park Commission). Union Park Commission filed an answer denying that the State Highway Commissioner had legal authority to condemn its lands and moved to dismiss the complaint for the reason that it did not set forth a cause of action. The State Highway Commissioner in turn moved to dismiss Union Park Commission's answer and separate defense. Union Park Commission's motion was denied. The State Highway Commissioner's motion was granted and judgment entered in his behalf. 89 *N. J. Super.* 202 (*Law Div.* 1965). Appeal was taken by Union Park Commission to the Appellate Division. While the appeal was there pending unheard, this Court granted Union Park Commission's motion for certification. (*R. R.* 1:10–1A).

Subsequent to the granting of the State Highway Commissioner's motion, Union Park Commission entered into an agreement with the State of New Jersey for the conveyance of the lands in question. The State Highway Commissioner has not sought dismissal of this appeal for mootness. To the contrary he seeks a final determination of the questions here involved because of their likely recurrence. In view of the public nature of the controverted legal ques-

tions and the likelihood of their recurrence we shall make such a determination. *State v. Perricone*, 37 *N. J.* 463 (1962), *cert.* denied 371 *U. S.* 890, 83 *S. Ct.* 189, 9 *L. Ed.* 2d 124 (1962); *State by State Highway Com'r v. Bd. of Chosen Freeholders of Bergen County*, 38 *N. J.* 33 (1962).

The facts and allegations as disclosed by the pleadings and affidavits are as follows:

The State Highway Commissioner sought to condemn certain lands owned by Union Park Commission and used for park purposes, for the construction of a portion of a state highway which is part of Federal Interstate and Defense Highway Route 78. He alleged that he was authorized by *R. S.* 27:1–1 *et seq.*, to acquire lands for this purpose by gift, devise, purchase, or by condemnation in the manner provided by *R. S.* 20:1–1 *et seq.* He further alleged that he was unable to reach an agreement with the Union Park Commission for the conveyance of said lands and consequently had the authority to proceed by way of condemnation. *R. S.* 20:1–1.

Union Park Commission, which was organized under *R. S.* 40:37–96 *et seq.*, admitted the general allegations but asserted that under *R. S.* 27:7–36 the State Highway Commissioner was barred from acquiring such lands by condemnation without its consent.

In answer to the construction of the statute suggested by Union Park Commission, which would severely restrict the State Highway Commissioner's power to condemn county park lands, the State Highway Commissioner argues that (1) *R. S.* 27:7–36 in no way limits his power of condemnation and (2) in any event *R. S.* 27:7–36 was repealed by *Laws* of 1965, *Chapter* 79 (*N. J. S. A.* 27:7–22).

The pivotal question therefore is whether *R. S.* 27:7–36 in any way serves to limit the State Highway Commissioner in his power to condemn lands owned by a park commission organized under *R. S.* 40:37–96 *et seq.* We are therefore first concerned with the meaning and intent of *R. S.* 27:7–36.

*R. S.* 27:7–36 reads:

"In the location of state highway routes *the commissioner shall not locate, lay out, construct, use or improve any route in, over, under, through or across a park,* reservation or parkway owned by or under the control and jurisdiction of any park commission organized under the provisions of sections 40:37–96 to 40:37–174 of the title Municipalities and Counties, *without the consent of the park commission.*

The state highway commissioner and the county park commission may contract with each other in relation to the location, laying out, opening, improving, construction and maintenance of a state highway route or routes in, over, under, through or across any park, reservation or parkway owned by or under the control and jurisdiction of the county park commission, fixing the location thereof, and defining the terms and conditions agreed upon for the laying out, opening, improving, construction and maintenance thereof, and *until the making and delivery of the contract the state highway commissioner shall not enter in or upon any park, reservation or parkway for the purpose,* except for preliminary surveys and examinations, *of laying out, opening, improving, constructing, maintaining* or using any state highway route in, over, under, through or across any such park, reservation or parkway.

*To effectuate the contract the park commission may convey to the state highway commissioner any lands* or rights in lands *of such park commission* in, over, under, through or *across which any state highway may, pursuant to the terms of any such agreement, be located."* (Emphasis added)

Appended to the bill which became *L.* 1928, *c.* 40 upon passage, and subsequently *R. S.* 27:7–36, was a statement which reads:

"The purpose of this act is to give the State Highway Commission and the Essex County Park Commission the right to enter into an agreement for the construction of a State Highway through Weequahic Park, in the City of Newark, County of Essex."

Implicit in this statement is the conclusion that the State Highway Commission at that time, was thought not to have the right to construct a highway through lands owned by a county park commission. This conclusion was engendered by *L.* 1895, *c.* 91, § 16 (*R. S.* 40:37–133) which then read in part:

"That all lands taken or held under this act for the purpose of public parks shall be forever kept open and maintained as such; * * *"

Arising out of this apparent prohibition and incident thereto was an additional inferred restraint which prohibited the Union Park Commission from voluntarily conveying park lands for highway purposes and the State Highway Commissioner from obtaining title to such lands for that purpose by exercise of his ordinary power of condemnation.

Newspaper articles and editorials appearing in the *Newark Evening News,* prior and immediately subsequent to the introduction of the bill which ultimately became *L.* 1928, *c.* 40 (*R. S.* 27:7–36), reinforce the conclusion that there then generally existed at least grave doubt that a conveyance of park lands by the Park Commission to the State for highway purposes was permitted. Such articles and editorials appeared in that newspaper on August 20, 1927, November 25, 1927, November 30, 1927, January 7, 1928, February 7, 1928 and March 13, 1928. Typical of the expressions are the following:

A news report appearing in the *Newark Evening News* on November 30, 1927 which reads:

"The Essex County Park Commission has no moral or *legal right to grant* the State Highway Commission a right of way through Weequahic Park for Route 29, J. Henry Harrison, counsel for the park board, declared last night in addressing a meeting of the Hillside Republican Club in Masonic Hall at which about 200 were present." (Emphasis supplied)

The report quoted counsel to the Park Commission as stating:

" '* * * The commissioners have no statutory or other authority, or any right in law or in morals, to surrender to any other use, public or private, any Integral (sic) part of the Essex County park system.

It was the declared purpose of the Legislature, and it has been the understanding of the people of the county, that lands incorporated in the park system should remain devoted in perpetuity for the use of enjoyment and recreation of the people of Essex County, and the moneys so generously contributed by our people have been contributed upon the faith of this legislative purpose.' "

A news report appearing in the *Newark Evening News* of January 7, 1928, which reads in part:

"The Park Commission had maintained throughout the long controversy that it is under legislative mandate which makes consent to the taking of park lands impossible * * *"

A news report appearing in the *Newark Evening News* of March 13, 1928, which reads:

"The proposal to run State Highway Route 29 through Weequahic Park, paralleling the tracks of the Lehigh Valley Railroad, was advanced another step last night when the House passed Senator Wolber's bill authorizing the State Highway Commission to enter into an agreement with the Essex County Park Commission for the use of park lands.

The bill was introduced in pursuance of an understanding that the park commission would withdraw its objection to the use of Weequahic Park, though not conceding the right of the Highway Commission to condemn park lands for road purposes."

We cannot say that the foregoing construction of that statute is incorrect. Other county park acts, as for example, *R. S.* 40 :37–24 *et seq.; R. S.* 40 :37–72 *et seq.; R. S.* 40 :37–175 *et seq.; R. S.* 40 :37–195, each contained a provision practically identical with that previously quoted. The number of statutes adopted over the years to specifically permit conveyances or grants by some one of these park commissions demonstrates that the opinion was generally held that absent such special statutes, a park commission had no power to convey. See *R. S.* 40 :37–87, 146, 187, 239; *N. J. S. A.* 40 :37–95.19, 95.36, 145, 146.1. This conclusion is strengthened by the statements of purpose appended to *L.* 1927, *c.* 179; *L.* 1931, *c.* 160; *L.* 1941, *c.* 229; *L.* 1950, *c.* 241, all of which in effect imply that the respective park commissions do not have the power to convey lands owned by them.

It must be concluded that the purpose of *R. S.* 27 :7–36 was to eliminate the general mandate of *L.* 1895, *c.* 91, § 16 preventing the use of park lands for other than park purposes and thus to permit such lands to be used for state highway purposes. However, in order to preserve the legislative "high concern for the preservation, maintenance and improvement of county park systems," *Union Co. Bd. of Chosen Free-*

*holders v. Union Co. Park Comm.*, 41 *N. J.* 333, 341 (1964)., the statute required that consent first be obtained from the park commission regarding the location of the highway before any work on the land be undertaken. Of course, as with other administrative bodies, this discretion of the park commission must be reasonably exercised. *Richardson v. Caputo, 46 N. J.* 3 (1965) ; *United Hunters Assn. of N. J., Inc. v. Adams, 36 N. J.* 288 (1962) ; *Flanagan v. Civil Service Department, 29 N. J.* 1 (1959) ; *Thomas v. Bd. of Ed. of Morris Tp., 89 N. J. Super.* 327 (*App. Div.* 1965), affirmed 46 *N. J.* 581 (1966) ; *Elizabeth Lodge No. 289, etc. v. Legalized Games, etc., 67 N. J. Super.* 239 (*App. Div.* 1961) ; *Maple Hill Farms, Inc. v. Div. of N. J. Real Estate Comm., 67 N. J. Super.* 223 (*App. Div.* 1961). The state highway commissioner has an adequate remedy if he conceives that the park commission has improperly exercised its discretion in refusing to consent to the location of the highway.

▇▇▇ Incidental to and implementing the purpose to permit the construction of state highways on county park lands was the grant of power to the park commission to consensually convey lands to the State for that purpose thereby settling any doubt that such power may have existed. Implied as well, was the vesting of the highway commissioner with the traditional power of condemnation, generally provided by *R. S.* 27:7–22 through *R. S.* 20:1–1, insofar as county park lands are concerned. The only limit on the power of condemnation is the requirement that the park commission agree to the proposed route of the highway. The refusal of the park commission to approve the location of the highway route is no ground for the exercise of the power of eminent domain by the commissioner. Such affirmative approval must be obtained as a condition precedent to the institution of condemnation proceedings. But as above stated, such refusal must of course be reasonable and not arbitrary and cannot concern itself with price or related subjects.

▇▇ The Union Park Commission and the State Highway Commissioner not having here agreed upon such a location,

the motion of the State Highway Commissioner should have been denied and the motion of the Union Park Commission granted (although not on the broad grounds advanced by that body).

The State Highway Commissioner as above noted, argues that *N. J. S. A.* 27:7–22, dealing with commissioner's power of condemnation, repeals *N. J. S. A.* 27:7–36 by implication. The short answer to that argument is to be found in *Swede v. City of Clifton,* 22 *N. J.* 303, at page 317 (1956), where the court said:

"The question of repeal is essentially one of legislative intention; and there is a presumption as a matter of interpretive principle and policy against an intent to effect a repeal of legislation by mere implication. The purpose so to do must be free from all reasonable doubt. Repeals by implication are not favored in the law; and where the statutory provisions may reasonably stand together, each in its own particular sphere of action, there is not the repugnancy importing the design to repeal the earlier provision. *Kuberski v. Haussermann,* 113 *N. J. L.* 162 *(Sup. Ct.* 1934); *Goff v. Hunt,* 6 *N. J.* 600 (1951); *Henninger v. Board of Chosen Freeholders of Bergen County,* 3 *N. J.* 68 (1949)."

We can find no such intent to effect a repeal.

The foregoing would ordinarily have led to a reversal and remand for trial of the reasonableness of the Union Park Commission's position. However, the parties have settled the controversy as above stated. Therefore, the matter now being moot, we dismiss the appeal without costs.

*For dismissal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.