93 N.J. Super. 544 (1967)
226 A.2d 471
HENRY F. FOX AND JUSTIN J. JECKER, PLAINTIFFS,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF WEST MILFORD: J. HAROLD STRAUB, SUPERINTENDENT OF SCHOOLS OF PASSAIC COUNTY; AND ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 19, 1967.
*549 Mr. Robert D. Gruen for plaintiffs (Morton P. Covitz on the brief).
Mr. Aaron Dines for defendant Board of Education of West Milford Township (Messrs. Wallisch & Wallisch, attorneys).
Mrs. Marilyn Loftus Schauer, Deputy Attorney General, for defendant J. Harold Straub, Superintendent of Schools of Passaic County (Mr. Arthur J. Sills, Attorney General of *550 the State of New Jersey; Mr. Joseph A. Hoffman, Deputy Attorney General, on the brief).
LARNER, J.S.C.
Plaintiffs Henry F. Fox and Justin J. Jecker are citizens and taxpayers of West Milford Township, Passaic County. They bring this action in lieu of prerogative writs by which they challenge the validity of two bus contracts awarded by the West Milford Board of Education for the transportation of children to two private, nonprofit parochial schools in the municipality. Plaintiffs have joined the Attorney General of New Jersey as a defendant because of their attack on the constitutionality of a statute of this State (R.R. 4:37-2), and J. Harold Straub, Superintendent of Schools of Passaic County, because of his supervisory powers over the local board of education (N.J.S.A. 18:4-7).
Plaintiffs not only attack the contracts for bus transportation and the resolutions underlying them, but they also challenge the constitutionality of the enabling legislation, N.J.S.A. 18:14-8.
Plaintiffs' position in this litigation involves basically three contentions:
1. The enabling statute, N.J.S.A. 18:14-8, and the municipal action awarding the transportation contracts violate the provisions of the First Amendment to the United States Constitution which prohibits the adoption of any "law respecting an establishment of religion," as it is made directly applicable to the states by virtue of the due process clause of the Fourteenth Amendment.
2. The statute and municipal action violate Art. VIII, § III, pars. 2 and 3; Art. VIII, § IV, pars. 1 and 2, as well as Art. I, pars. 3 and 4 of the 1947 New Jersey Constitution.
3. The action of the local board of education is not authorized under N.J.S.A. 18:14-8 because the transportation contracts and routes were established specially for the children attending two nonpublic schools and were not incidental to the transportation to public schools and the routes established for such public schools.
*551 All defendants join in a mutual assertion that the contracts, resolutions and statute are not violative of the Federal or New Jersey Constitutions; and that the creation of the two special bus routes for the parochial school children at public expense is within the authority granted to the school board by the Legislature (N.J.S.A. 18:14-8).
The case has been submitted to the court for determination by cross-motions for summary judgment based upon a written stipulation of facts and annexed exhibits which have been filed in the cause.
In the Spring of 1962 the West Milford Township Board of Education established routes for the transportation of school children to public schools within the district. At that time a request had been made by representatives of St. Joseph's Roman Catholic Church and Our Lady Queen of Peace Church urging the board of education to furnish transportation without charge for pupils attending their parochial schools. The request was for the purpose of providing transportation "beyond and outside the routes established for public school children." At that time the board denied the request.
Both schools are affiliated with the Roman Catholic Church and are organized as nonpublic, though nonprofit, organizations for teaching children of the Catholic faith. Their curriculum is substantially the same as that offered in public schools in New Jersey, with additional courses in religion and sectarian prayer.
Upon denial of their request by the board, the two churches filed a petition with the State Commissioner of Education appealing the denial and seeking to compel the township board of education to furnish such transportation. On April 22, 1964 the Commissioner decided that there was no duty on the part of the board of education to furnish transportation for nonpublic school pupils except along routes established for the transportation of public school children under its jurisdiction.
*552 West Milford is a large township, essentially rural, hilly, with many wooded areas. It has experienced extensive population growth in recent years, which has resulted in several more-or-less discrete clusters of homes, although there is no heavy concentration of inhabitants at any point. Public transportation is available to New York City and to other distant points, but there is no public transportation which serves local needs.
The school system comprises four elementary schools and a new high school which opened in September 1962. Before that date, pupils of secondary grades were sent to Butler High School in Morris County. The withdrawal of these pupils to attend high school within their own township occasioned a redesigning of school transportation routes and precipitated, ultimately, the controversy in question.
St. Joseph's School, operated by St. Joseph's Roman Catholic Church, was opened in 1956. Its location in the southeastern section of the township is such that many of the buses which formerly transported pupils to Butler High School went past, or near its site, and a large number of pupils found its routes advantageous to them. They were transported on the public school buses. When the township's first school was opened to the north of St. Joseph's School, the direction of flow of public school transportation was reversed, thereby eliminating many of the routes which previously were useful to the parochial pupils attending.
Our Lady Queen of Peace School, operated by Our Lady Queen of Peace Roman Catholic Church, commenced operation in another section of the Township in 1960. This school was also affected by the rerouting of buses for the 1962-1963 school year. Certain routes which formerly passed its doors now proceeded by other roads some distance away, necessitating the shuttling of parochial school pupils to their school by buses provided by the Church. In addition, the continued growth of the parochial school, whose plans call for the addition of a grade each year until a complete elementary *553 school program is offered, has increased annually the number of pupils requiring transportation.
Following the decision of the Commissioner dismissing the appeal, there were continued demands by the two Catholic schools as well as other citizens and residents of the township urging the board to furnish transportation for the children attending these schools, not only within the routes established for public school children, but also to and from the parochial schools, including transportation outside the limits of the routes established for public school children.
Apparently, as a result of this public pressure, on September 24, 1964, the Board of Education of West Milford adopted a resolution establishing Routes Q-1, Q-2, Q-3 and Q-4 to service Our Lady Queen of Peace School pupils and routes SJ-1, SJ-2 and SJ-3 to service St. Joseph's School pupils, and implemented the same on September 30, 1964 by awarding a contract to Philips Transportation Co. for the school year of 1964-1965 at $600 per route. A prior effort to secure approval of these routes by the County Superintendent of Schools proved abortive when the Superintendent advised that the resolution creating these routes for transportation to nonpublic schools did not come within the purview of his office for review.
Thereafter, on July 29, 1965 the board of education by resolution established routes for various schools for the school year 1965-1966, including routes designated as SJ-1, SJ-2, SJ-3 and SJ-4, to service St. Joseph's School pupils, and routes Q-1, Q-2, Q-3, Q-4, Q-5 and Q-6, to service Our Lady Queen of Peace School pupils. All of the foregoing routes were established for the sole and primary purpose of transporting school children to and from these parochial schools, and were not for the primary benefit of public school children.
On August 19, 1965 the board adopted a resolution awarding a contract to Philips Transportation Co., Inc. to transport all parochial school pupils for the sum of $69.20 per *554 diem for the school year 1965-1966, and following said action a contract was executed pursuant to said resolution.
The entire cost of that portion of the transportation solely for students attending the nonpublic, nonprofit schools is borne by defendant board of education, which receives no state aid in connection therewith, and has requested none.
In 1964-65 the cost of transportation of school children along established public routes was $146,446.20, and the cost of transportation of school children along the nonpublic routes was $4,200. In 1965-66 the cost of transportation of the children along public routes was $162,609.49, and the cost for the transportation of school children on the nonpublic routes was $12,884.84.
The two Catholic schools involved are the only nonpublic, nonprofit schools in the municipality and are the only schools affected by the bus transportation contracts.

I
The prime attack on the contract and the state legislation underlying the same is that they are violative of that portion of the First Amendment of the United States Constitution, which provides: "Congress shall make no law respecting an establishment of religion * * *." It is contended that since the Fourteenth Amendment dictates the applicability of the First Amendment to the states (Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)), the expenditure of public funds for the benefit of church-operated parochial schools violates the fundamental wall of separation between church and state guaranteed by the Constitution.
Plaintiffs fully recognize that the constitutionality of the statute has been sustained by the United States Supreme Court in a case arising in New Jersey and involving the very statute under consideration. Everson v. Board of Education of Ewing Township, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), affirming 133 N.J.L. 350 (E. & A. *555 1945). They assert, however, that the 5-4 decision of the Supreme Court in Everson is not the currently prevailing law in view of later expressions of the court in analogous determinations involving the First Amendment, and that if the issue were presented to the Supreme Court at the present time, the statute would be struck down as unconstitutional.
A review of the writings, both judicial and non-judicial, subsequent to Everson reveals an ever-mounting criticism of the soundness of the majority opinion by Mr. Justice Black, and a support of the reasoning and logic of the dissents of Mr. Justice Rutledge and Mr. Justice Jackson. Many writers have rejected the "child benefit" theory advanced by the majority of the Supreme Court in its justification for sustaining the expenditure of public funds for the transportation of children to parochial schools as a "public welfare" measure. See, e.g., Pollak, "Some Reflections," 71 Yale L.J. 145 (1962); Comment, "A Constitutional Analysis of the Wisconsin School Bus Law," 1962 Wis. L. Rev. 500 (1962), La Noue, "The Child Benefit Theory Revisited," 13 J. Pub. L. 76 (1964). They have joined with Mr. Justice Rutledge in asserting that the church ultimately benefits from the assumption of the transportation expense by the board of education and that the benefit to the children or the degree of benefit to the church does not serve as the true measure of constitutionality. Any invasion of the "wall of separation" represents a violation of the fundamental separation of church and state as guaranteed by our forefathers in the Constitution.
Among the significant trends in judicial development cited by plaintiffs which point to a current rejection of the Everson holding are the Supreme Court opinions in Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), and Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601 (1962), where the recital of prayers in public schools was struck down as violative of the establishment clause of the First Amendment. The language of the court in those cases affirms the fundamental *556 character of that clause and the danger of incursions as a starting wedge in the process of destruction of the "wall of separation."
It is also of more than passing interest that Mr. Justice Douglas, who voted with the majority in Everson, had second thoughts about the propriety of the majority's conclusion when he noted in a concurring opinion in Engel v. Vitale, supra:
"My problem today would be uncomplicated but for Everson v. Board of Education * * * which allowed taxpayers' money to be used to pay the bus fares of parochial school pupils as part of a general program under which the fares of pupils attending public and other schools were also paid. The Everson case seems in retrospect to be out of line with the First Amendment. Its result is appealing, as it allows aid to be given to needy children. Yet by the same token, public funds could be used to satisfy other needs of children in parochial schools  lunches, books and tuition being obvious examples. Mr. Justice Rutledge stated in dissent what I think is durable First Amendment philosophy." * * * (Emphasis supplied)
Professor Pollack, in an article dealing with the opinion of Mr. Justice Rutledge in 71 Yale L.J. 1451 (1962), also noted:
"Justice Douglas' repudiation of Everson has significance far beyond the school prayer issue. The Everson opinion was written by Justice Black, but Mr. Justice Frankfurter, long steadfast on issues of separation of church and state, was one of the dissenters. Justice Douglas' conclusion that Everson was `out of line with the First Amendment' means that, of the three sitting Justices who were members of the Everson court, only Justice Black remains committed to its teaching. Moreover, Everson was a five-to-four decision (the dissenters were Justices Frankfurter, Jackson, Rutledge and Burton) so that Mr. Justice Douglas' defection robs Everson of virtually all its precedential impact. And this is of real consequence, because Everson is the chief doctrinal reliance of those who argue that governmental appropriations in aid of Church related schools are constitutional." (at p. 1457)
Many state courts which have been able to support their views under the particular language of their state constitutions have avoided the binding effect of Everson and have *557 struck down statutes and local action authorizing parochial school transportation by revenue raised through public taxation. In doing so they have generally refused to follow the underlying "child benefit" theory advanced by Mr. Justice Black in Everson: State ex. rel. Traub v. Brown, 6 W.W. Harr. 181, 36 Del. 181, 172 A. 835 (Sup. Ct. 1934), writ of error dismissed, 9 W.W. Harr. 187, 39 Del. 187, 197 A. 478 (Sup. Ct. 1938); Opinion of the Justices, 216 A.2d 668 (Del. Sup. Ct. 1966); Visser v. Nooksach Valley School Dist. No. 506, 33 Wash.2d 699, 207 P.2d 198 (Sup. Ct. 1949); Matthews v. Quinton, 362 P.2d 932 (Alaska Sup. Ct. 1961); McVey v. Hawkins, 364 Mo. 44, 258 S.W.2d 927 (1953); State ex. rel. Van Straten v. Milquet, 180 Wis. 109, 192 N.W. 392, 395 (Sup. Ct. 1928); Reynolds v. Nussbaum, 17 Wis.2d 148, 115 N.W.2d 761 (Sup. Ct. 1963); Sherrard v. Jefferson County Board of Education, 294 Ky. 469, 171 S.W.2d 963 (Sup. Ct. 1943); Zellers v. Huff, 55 N.M. 501, 236 P.2d 949 (Sup. Ct. 1951); Gurney v. Ferguson, 190 Okl. 254, 122 P.2d 1002 (Sup. Ct. 1941); Board of Education for Independent School Dist. No. 52 v. Antone, 384 P.2d 911 (Okl. Sup. Ct. 1963).
If I were free to determine this issue of constitutionality unfettered by the precedential effect of the direct holding of the majority opinion in Everson, I would incline toward the dissent of Mr. Justice Rutledge and his finding of unconstitutionality within the meaning and purposes of the establishment clause of the First Amendment.
However, as a trial court I am duty bound to follow the law as enunciated by courts of superior jurisdiction regardless of my views as to their correctness; and it is not within the area of discretion of a trial court to anticipate what an appellate court may do in the future in the light of an existing direct holding. Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415 (1961); In re Arens, 72 N.J. Super. 310, 320 (Cty. Ct. 1962); In re Hartung, 52 N.J. Super. 508, 511 (App. Div. 1958); Mick v. American Dental Ass'n, 49 N.J. Super. 262 (App. Div. 1958); Casale v. *558 Housing Authority of City of Newark, 42 N.J. Super. 52 (App. Div. 1956); McGrath v. Jersey City, 70 N.J. Super. 143 (Law Div. 1961), affirmed 38 N.J. 31; 21 C.J.S., Courts, § 187. The decisions of the U.S. Supreme Court are truly supreme in the area of federal constitutional law, and I am therefore bound by the Everson case. And the mere fact that the contracts in West Milford cover routes established specifically for parochial school children and involve payments to an independent contractor cannot serve as a distinguishing springboard to avoid the binding effect of Everson on the broad constitutional issue. I must therefore conclude that the legislation contained in N.J.S.A. 18:14-8 and the bus transportation contracts do not violate the First Amendment of the Federal Constitution.

II
Plaintiffs also assert that the applicable legislation authorizing public expenditures for the transportation of parochial school children and the implementation by the West Milford Board of Education violate the provisions of the 1947 New Jersey Constitution. They contend that such activity contravenes Art. I, pars. 3 and 4 dealing with religious liberties, as well as Art. VIII, § III, pars. 2 and 3 and § IV, pars. 1 and 2, dealing with the prohibition against the donation of public moneys and the inviolability of the fund created for the support of "free public schools."
The constitutionality of N.J.S.A. 18:14-8 under the provisions of the New Jersey Constitution was laid at rest by the Court of Errors and Appeals of this State in Everson v. Board of Education of Ewing Township, 133 N.J.L. 350 (1945); affirmed on federal constitutional grounds in 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), which was decided under identical provisions of the 1844 New Jersey Constitution.
Since that decision, New Jersey adopted the 1947 Constitution, which contained a new provision as follows (Art. VIII, § IV, par. 3):
*559 "The Legislature may, within reasonable limitations as to distance to be prescribed, provide for the transportation of children within the ages of five to eighteen years inclusive to and from any school."
A perusal of the constitutional debates when the foregoing provision was under consideration by the 1947 Constitutional Convention reflects a clear intent to incorporate the principles of Everson into the fundamental law of our State so as to empower the Legislature to provide for transportation of school children to public and nonpublic schools, and to prevent a possible judicial construction to the contrary in the future. See Proceedings of the Constitutional Convention of New Jersey, pp. 99, 149, 704-726, 1243-1244; 5 Id., pp 789-809 (Committee on Taxation and Finance).
Thus, from the plain meaning of Art. VIII, § IV, par. 3, the constitutional history underlying the same, and the direct holding of our former highest court, it is manifest that the legislation in question does not violate the New Jersey Constitution. Under the affirmative constitutional authorization, the New Jersey Legislature is clearly empowered to provide for the transportation of children to and from parochial schools as well as public schools. And, by the same reasoning, the action of the local board pursuant to that legislation does not offend the stated provisions of the New Jersey Constitution.

III
Based upon an assumption of the constitutionality of the legislation and the municipal action, from a federal and state viewpoint, it next becomes necessary to determine whether the method of implementation by the local board of education falls within the authority granted by the enabling legislation. This entails the construction of the legislative intent as expressed in N.J.S.A. 18:14-8:
"Whenever in any district there are children living remote from any schoolhouse, the Board of Education of the district may make rules and contracts for the transportation of such children to and *560 from school, including the transportation of school children to and from school other than a public school, except such school as is operated for profit in whole or in part.
When any school district provides any transportation for public school children to and from school, transportation from any point in such established school route to any other point in such established school route shall be supplied to school children residing in such school district in going to and from school other than a public school, except such school as is operated for profit in whole or in part.

* * * * * * * *"
The pivotal question is whether the creation of bus routes designed solely for the pupils of the two private parochial schools, and the undertaking to defray the cost through public taxation, is within the authorization of the foregoing legislation.
Plaintiffs contend that the second paragraph of the statute limits the power in the first paragraph so as to authorize provision for nonpublic school children only where it is incidental to the transportation of public school children and between points on established school routes for such public school children. Defendants assert that under the first paragraph of the foregoing statute, the local board of education has the discretionary authority to create bus routes for nonpublic school children which are not limited by the existing public school routes, and that the second paragraph of the statute is included for the purpose of creating a mandatory duty to provide nonpublic school transportation along established public school routes. Defendants thus conclude that the board of education acted properly within its discretionary authority under the first paragraph of the enabling legislation.
The precise issue involving the construction of this statute as it applies to the creation of bus routes for private school transportation beyond those established for public schools has never been decided judicially in our State. The legislative language is undoubtedly ambiguous, and requires resort to legislative history, contemporaneous construction and administrative interpretation to shed light on the true *561 meaning and intent of the statute. Pringle v. N.J. Dept. of Civil Service, 45 N.J. 329 (1965); N.J. Pharmaceutical Ass'n v. Furman, 33 N.J. 121 (1960); Lloyd v. Vermeulen, 22 N.J. 200 (1956); Lane v. Holderman, 23 N.J. 304, 322 (1957).
The first pupil transportation law in New Jersey dates back to 1894, when school boards were granted discretion to provide transportation for children living remote from the schoolhouse and to levy a special tax for that purpose. L. 1894, c. 335, § 22. In 1900 the law was amended to read as follows: (L. 1900, c. 96, § 118):
"Whenever in any school district there shall be children living remote from the schoolhouse, the board of education of such district may make rules and contracts for the transportation of such children to and from school."
This statute remained substantially in that form except for minor amendments until 1941. In 1936 and 1940 bills were introduced in the Legislature amending R.S. 18:14-8 so that "children attending schools other than a public school * * * shall be entitled to the same rights and privileges as to transportation to and from school as are provided for children of public schools." Assembly Bill Nos. 400 (1936) and 123 (1940). Both bills died in committee.
Thereafter, on March 10, 1941 Senator Driscoll introduced a bill (Senate Bill No. 152) which was similar to the bills introduced in 1936 and 1940 in granting to private school children the same rights and privileges as to transportation as those provided for children of public schools. The Statement attached to this bill read:
"The object of this bill is to provide for transportation to and from school of children attending other than public schools except such schools as those which are operated for profit in whole or in part."
The bill passed the Senate in its original form on March 24, 1941, but was amended to its present form by the *562 Assembly on June 3, 1941, and subsequently passed the Senate in the amended form on June 9, 1941.
The fact that the broad bill of Senator Driscoll failed of passage and was adopted as law only after the restrictive amendments were incorporated is a substantial factor in arriving at the legislative intent.
A contemporaneous newspaper article in the New York Times of June 4, 1941 pointed out:
"Though the measure had been approved by the Senate, it will be returned to the upper house for an amendment by Assemblyman John R. Boswell of Cape May which would restrict the bus service to existing bus routes * * *."
See State of New Jersey, by State Highway Commissioner v. Union County Park Commission, 48 N.J. 246 (Dec. 5, 1966), for use by our Supreme Court of contemporaneous newspaper articles as aids for statutory interpretation.
It is also significant that in 1966 bills were introduced in the Assembly (Nos. 433 and 543) which are designed to provide bus transportation for private school children on a par with that provided for public school children. The obvious purpose of this legislation, inspired by great public pressure, is to extend the bus service for parochial schools beyond that permitted by the statutory enactment of 1941, under a tacit assumption that the existing legislation limits authority for such service to established public school routes.
The limitation of power to provide parochial school busing only on established public school routes is buttressed by expressions of our courts. Although the issue was not directly before the court in Everson, it is highly persuasive that several of the opinions in that litigation in the New Jersey courts made reference to the intent of the legislation. Justice Heher, in his dissent in the Supreme Court, 132 N.J.L. 98, 101 (Sup. Ct. 1945), stated:
"* * * And I cannot accept the view that the mere transportation of pupils to private schools, over a route already established for the *563 conveyance of public school children, constitutes a gift, donation or appropriation of money by the State * * *

* * * * * * * *
* * * And I think the legislature possesses the incidental right of providing transportation to such schools of children residing at a distance, especially where it is confined to routes found necessary for the conveyance of public school children. * * *"
Chancellor Campbell, for the majority of the Court of Errors and Appeals, 133 N.J.L. 350, 354 (1944), pointed out:
"The intent of P.L. 1941, chapter 191, is that pupils may be transported to parochial schools only as an incident to the transportation of pupils to the public schools since the statute provides that children attending schools could be furnished transportation by any school district from any point on an already established school route to any other point on such established school route." (Emphasis supplied)
In Board of Education of Central Regional High School, District of Ocean County v. State Board of Education, 27 N.J. 76 (1958), the Supreme Court sustained, under N.J.S.A. 18:14-8, the power of a regional high school district to transport along established school routes parochial school children of grades below those for which the district was created. Since the statute makes no distinction based on grades, the court concluded that the bus service was within the statutory power of the regional board. In arriving at this conclusion Justice Jacobs throughout the opinion makes reference to the fact that the transportation was along established public school bus routes (at pp. 77, 79, 80, 81), apparently assuming, without discussion, that there was compliance with the statutory prerequisite limiting parochial school transportation to established public school routes.
The statutory term "established school route" has acquired a particular meaning and significance because of the rules and regulations adopted by the State Board of Education pursuant to N.J.S.A. 18:2-4 and 18:14-12, whereby the State Board is invested with broad powers of supervision *564 and control of public education, including specifically pupil transportation. Rankin v. Board of Education of Egg Harbor, 135 N.J.L. 299 (E. & A. 1946). In the exercise of this power the State Board has adopted Rule 1416, entitled "Routes," which reads as follows:
"A. A district board of education shall establish a school transportation route or routes when it determines to provide transportation to and from school for public school children under its jurisdiction who live remote from any schoolhouse.
B. An established route shall be any school transportation route authorized by action of a board of education as a route for children attending a public school when such route is described in detail in the minutes of the board of education and approved in writing by the county superintendent; the route description shall include but not be limited to:
1. A place and time of starting.
2. A listing of the streets, roads or roadbeds to be traveled in proper sequence, and
3. A place and approximate time of termination.
C. Any established route for public school pupils shall be regarded as an established route for the transportation of children attending a school other than a public school, except such school as is operated for profit in whole or in part.
D. Any child who attends a school other than a public school, except such school as is operated for profit in whole or in part, and who lives remote from such school, shall be entitled to transportation along that part of any established route advantageous to him, provided he presents himself at a stop on the route according to schedule.
E. Where public carriers are used and transportation charges for public school pupils are paid by the board of education, the board shall consider the fare zones used for public school pupils as the limits to be observed in the application of N.J.S. 18:14-8 for pupils attending a non-public school."
The only permissible routes, therefore, are those created pursuant to these rules. They reflect a clear administrative interpretation of the statute as limiting nonpublic school transportation to the established routes created for public schools. This administrative construction is further buttressed by the decision of the State Commissioner of Education in St. Joseph's Church v. Board of Education of West Milford Township on April 22, 1964, when the two churches *565 involved in this litigation sought to compel the local board to furnish bus service beyond the established school routes. Although this decision of the Commissioner held only that there was no mandatory duty to supply such service, the opinion exhibits this official's view that the statute authorizes non-public school busing only as an incident to public school busing on established routes.[1]
Defendants urge that the term "may" in the first paragraph of N.J.S.A. 18:14-8 creates a carte blanche discretion in the local board to provide nonpublic school transportation for any distance and in any direction, regardless of the established public school routes. Under the statutory scheme, a school district may not find it necessary to furnish transportation to schools because of the proximity of children to the schoolhouses, regardless of the duty under N.J.S.A. 18:11-1 as interpreted by Board of Education of West Amwell in Hunterdon County v. State Board of Education, 5 N.J. Misc. 152, 135 A. 664 (Sup. Ct. 1927). If however, a district finds it necessary to supply transportation because of remoteness, the first paragraph of the statute authorizes the means by which it may provide the same for public and non-public school children, i.e., either through its own agencies or through third-party contracts. See McKnight v. Cassady, 113 N.J.L. 565, 567 (E. & A. 1934), under similar language of the 1904 statute. And the second paragraph dictates that if the local district decides to furnish transportation by the means authorized under the first paragraph, it shall supply transportation to children attending private, nonprofit schools to points encompassed within established public school routes.
I find that the creation of routes designed solely for nonpublic school children without regard to the established *566 public school routes, and the expenditure of public funds for that purpose, violates the legislative intent expressed in N.J.S.A. 18:14-8.
The contracts of the West Milford Board of Education with Philips Transportation Co. and the resolutions underlying them are therefore illegal and void and will be set aside.
NOTES
[1] An interesting sidelight to note is that the Board of Education of West Milford contended before the Commissioner in 1964, that transportation of parochial school children must be limited to established public school routes under the statute, and that the Attorney General took the same position in his brief before the Supreme Court in Board of Education of Central Regional High School, District of Ocean County v. State Board of Education, 27 N.J. 76 (1958).