103 N.J. Super. 480 (1968)
247 A.2d 691
HENRY A. McCANNA, DOROTHY BELLE POLLACK, A. MILTON BELL, LAMAR JONES, BORIS S. BIERSTEIN, BOARD OF EDUCATION OF THE TOWNSHIP OF TEANECK, IN THE COUNTY OF BERGEN, SHIRLEY YOST, PETER E. STOKES, AND MARJORIE A. STOKES, PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, CARL L. MARBURGER, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY, THE NEW JERSEY STATE BOARD OF EDUCATION, ABRAM A. VERMEULEN, DIRECTOR, DIVISION OF BUDGET AND ACCOUNTING OF THE STATE OF NEW JERSEY, JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY, ARCHIE F. HAY, JR., SUPERINTENDENT OF SCHOOLS OF BERGEN COUNTY, NEW JERSEY, BOARD OF EDUCATION OF THE BOROUGH OF CLOSTER, IN THE COUNTY OF BERGEN, BOARD OF EDUCATION OF THE TOWNSHIP OF RIVER VALE, IN THE COUNTY OF BERGEN, AND THE BOARD OF EDUCATION OF THE PASCACK VALLEY REGIONAL SCHOOL DISTRICT, IN THE COUNTY OF BERGEN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 8, 1968.
*482 Mr. Robert D. Gruen for plaintiffs (Mr. Morton R. Covitz appearing).
Mr. Arthur J. Sills, Attorney General of New Jersey, for defendants Arthur J. Sills, Attorney General of New Jersey, Carl L. Marburger, Commissioner of Education of New Jersey; The New Jersey State Board of Education; Abram A. Vermeulen, Director, Division of Budget and Accounting of New Jersey; John A. Kervick, Treasurer of New Jersey, and Archie F. Hay, Jr., Superintendent of Schools of Bergen County, New Jersey. (Mr. Stephen G. Weiss, Deputy Attorney General, appearing).
Messrs. Burke, Sheridan & Hourigan, for defendant Board of Education of Closter.
Messrs. Parisi, Evers & Greenfield, for defendants Board of Education of River Vale Township and Board of Education of the Pascack Valley Regional School District.
LORA, J.S.C.
Plaintiffs bring this action alleging that chapter 74 of the Laws of 1967, as amended by chapter 29 of the Laws of 1968, The School Transportation Law, is unconstitutional in that it is violative of the First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, in that it affects the establishment or advancement of religion.
The statute, in pertinent part, states:
*483 "Whenever in any district there are pupils residing remote from any schoolhouse, the board of education of the district may make rules and contracts for the transportation of such pupils to and from school, including the transportation of school pupils to and from school other than a public school, except such school as is operated for profit in whole or in part.
When any school district provides any transportation for public school pupils to and from school pursuant to this section, transportation shall be supplied to school pupils residing in such school district in going to and from any remote school other than a public school, not operated for profit in whole or in part, located within the State not more than 20 miles from the residence of the pupil [provided] the per pupil cost of the lowest bid received does not exceed $150.00 and if such bid shall exceed said cost then the parent, guardian or other person having legal custody of the pupil shall be eligible to receive said amount toward the cost of his transportation to a qualified school other than a public school, regardless of whether such transportation is along established public school routes."
This has been codified in N.J.S. 18A:39-1 which, in pertinent part, is identical with the above-quoted statute.
The case was submitted to the court on cross-motions for summary judgment based upon a written stipulation of facts with exhibits annexed.
The facts show that as of April 1967, 363,560 students were enrolled in New Jersey nonpublic schools, grades kindergarten through twelfth. Of this number, 332,519 students attended 644 schools operated under the auspicies of the Roman Catholic Church. Therefore, 91.4% of the total nonpublic school population attended Roman Catholic schools. 88,782 students, or 26.6% of the Roman Catholic school population, lived two miles or more from the schools they attended. Of that number 69,656 were transported to school by bus. This bus transportation was provided by 47 Roman Catholic schools, but counsel were unable to determine if the parents paid for the same. Bus transportation to 327 of the Catholic parochial schools was provided directly by parents. (Plaintiffs contend that said schools are now relieved at least of an administrative burden.)
During the 1967-68 school year the Board of Education of Teaneck Township transported 462 students to and *484 from private schools, and of that total 402 students, or 87.01%, were transported to parochial schools run by various religious societies or groups. During this same school year defendant Pascack Valley Regional High School District Board of Education transported a total of 295 students to private schools at an average per pupil cost of $198.89[1]. It also transported 741 public school pupils at an average per pupil cost of $114.98. The facts also show that the boards of education of Closter and Teaneck made expenditures in excess of $150 per pupil for the purpose of transporting pupils to private schools. Teaneck's cost for transporting 1.196 public school students to and from school was $51.73 per pupil during the 1966-67 school year. In 1965-66 the average per pupil cost was $57.90, and in 1964-65 it was $55.06.
The parochial schools have a course of education which is substantially the same as that of the public schools in New Jersey. However, the curriculum in each of these schools includes certain courses concerned with the tenets of the various religions sponsoring said schools, and organized sectarian prayer is included in the curriculum. Some of the faculty of these schools consist of Roman Catholic clergy, nuns, Protestant clergy and Jewish clergy.
In 1947 the United States Supreme Court upheld the constitutionality of N.J.S.A. 18:14-8, the predecessor of the statute here under consideration, in Everson v. Board of Education of Ewing Tp., 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, affirming 133 N.J.L. 350 (E. & A. 1945). The continuing vitality of that decision was assured by the Supreme Court this year in the case of Board of Education of Central School District No. 1 v. Allen, 392 U.S. 236, 242, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), wherein the court relied on the principles of Everson in upholding a New York law which made textbooks available to private *485 school students on an equal basis with public school students. The majority opinion therein stated:
"Of course books are different from buses. Most bus rides have no inherent religious significance, while religious books are common." (at p. 244, 88 S.Ct., at p. 1927)
And Mr. Justice Douglas in his dissenting opinion noted:
"Whatever may be said of Everson, there is nothing idealogical about a bus." (at p. 257, 88 S.Ct., at p. 1933)
Mr. Justice Black, also dissenting, said:
"It is not difficult to distinguish books, which are the heart of any school, from bus fares, which provide a convenient and helpful general public transportation service. * * * a general and non-discriminatory transportation service in no way related to substantive religious views and beliefs." (at pp. 252-253, 88 S.Ct., at p. 1931.)
Plaintiffs contend, however, that Everson is not dispositive of the issues herein for the reason that N.J.S. 18A:39-1 is not identical with N.J.S.A. 18:14-8 which was under consideration in that case. The current statute differs from the former in that it does not restrict the bussing of private school students to established public school routes, and in that the former statute did not provide for a $150 maximum per pupil assistance, which the evidence establishes is more than the average cost of bussing public school students.
The criteria for decision in the present case were set down by the United States Supreme Court in School District of Abington Township v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963):
"The test may be stated as follows: What are the purpose and the primary effect of the enactment? If either is the advancement or inhibition of religion, then the enactment exceeds the scope of legislative power as circumscribed by the Constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect *486 that neither advances nor inhibits religion. Everson v. Board of Education." (at p. 222, 83 S.Ct., at p. 1571)
Mr. Justice White prefaced his application of the Schempp test in Allen by stating that
"* * * This test is not easy to apply, but the citation of Everson by the Schempp Court to support its general standard made clear how the Schempp rule would be applied to the facts of Everson." Board of Education v. Allen, supra, 392 U.S., at p. 243, 88 S.Ct., at p. 1927.
Thus, the United States Supreme Court has approved of Everson as complying with the Schempp test.
In accordance with the Schempp test, plaintiff's argument is two-pronged. First, they contend that the purpose of N.J.S. 18A:39-1 is to aid religion through aid to parochial schools. Secondly, they argue that the primary effect of the statute is to support religion.
Plaintiffs seek to substantiate their position that the Legislature passed the bill for the purpose of aiding religion by inferences sought to be drawn from circumstances surrounding enactment. Initially, they point to the fact that most of the individuals who supported passage of the statute at public hearings were clergymen of various religions. Secondly, they maintain that a religious purpose is shown by the very fact that more than 91% of all nonpublic school students in New Jersey attend schools which are operated under the auspices of various religions. Finally, it is plaintiff's position that the language of the statute itself clearly demonstrates that the Legislature was concerned with aiding schools rather than students.
This court may not find an improper legislative purpose behind N.J.S. 18A:39-1 unless it be clearly shown, and the statute will be presumed to be constitutional in the absence of convincing proof to the contrary. In re Loch Arbour, 25 N.J. 258, 264, 265 (1957); WHYY, Inc. v. Berry, 25 N.J. 1, 10 (1957). Additionally, our courts *487 do not probe the motives of the Legislature in order to seek to establish an improper purpose. Two Guys From Harrison, Inc. v. Furman, 32 N.J. 199, 266 (1960); Grand Union Co. v. Sills, 43 N.J. 390 (1964), and Kasser Distillers Product Corp. v. Sills, 85 N.J. Super. 351, 356 (Ch. Div. 1964).
No strong conclusion may be reached from the fact that clergymen supported the passage of N.J.S. 18A:39-1. These men may have simply been interested in the welfare of the students who attend the private schools which are run by their respective religions. (Nevertheless, there were those who spoke against the bill at public hearings.) Also, the mere fact that more than 91% of the private school students in New Jersey attend church-run schools does not establish a prohibited purpose. The statute is not couched in terms which could be read as providing for a religious test in determining which students are entitled to bussing aid. The statute provides transportation assistance to any student attending a private school in New Jersey which is not run for profit if he resides between two and 20 miles from the school to which he seeks transportation provided the public school district in which he resides engages in the transporting of public school students. There is certainly no religious test contained therein.
Plaintiffs further base their argument that the Legislature was here concerned with and intended to aid schools and not students on the fact that under N.J.S. 18A:39-1 transportation aid is not given to pupils who attend private, profit-making schools, or to those who, while residing in New Jersey, attend private schools outside the State. They urge these exclusions as being indicative of the underlying motive of L. 1967, c. 74, and L. 1968, c. 29, and they reason that if the Legislature was truly concerned with child welfare and child benefits, it would bave seen to it that such benefits were extended to all children. The limitation contained in L. 1968, c. 29 is a maximum expenditure of $150 per pupil.
*488 Insofar as the exclusion of students attending schools operated for profit is concerned, it may well be that the legislators concluded that parents or guardians who could afford such schooling would not find the cost of transporting their children to and from the schools of their choice prohibitive and would not be "deterred by cost from ensuring that their children travel to and from school by a safe method of transportation." Rhoades v. School District of Abington Tp., 424 Pa. 202, 226 A.2d 53, 66, 71, 77 (Sup. Ct. 1967), where the identical issue (the profit v. non-profit dichotomy) was raised by the plaintiffs therein, and where six of the seven justices agreed that the exclusion of profit-making schools did not violate either the First or the Fourteenth Amendments, and only one justice was of the opinion that the exclusion reached federal constitutional dimensions and that the exclusion of children attending private profit-making schools was without rational basis if the statute was really intended to promote the safety and welfare of children. On appeal the United States Supreme Court ruled per curiam that Rhoades presented no substantial federal question. 389 U.S. 11, 88 S.Ct. 61, 19 L.Ed.2d 7 (1968).
I note, parenthetically, that information requested by the New Jersey Attorney General from the 21 county school superintendents revealed only 8 such schools in 4 counties. The other county superintendents had no information on private profit-making schools available. However, it would appear that the number of such schools in New Jersey is minimal, and it follows that the number of such children not qualifying for transportation benefits is inconsequential. And, as the late Justice Musmanno pointed out in Rhoades, if the Legislature is advised that there are some students who are endangered by travel hazards who are not covered by the statute, it can and may include them by appropriate amendment. However, as he further stated:
"It is no reasonable argument to say that because a statute does not make provision for a hypothetical minimal hazard, it should ignore a proved multiple peril." (226 A.2d, at p. 66)
*489 In Everson, Mr. Justice Black, in a footnote, alluded to the exclusion of children who attend profit schools but did not discuss the issue since it had not been raised below. 330 U.S., at p. 4, 67 S.Ct. 504, 91 L.Ed. 711 (1947). It is clear that he was contemplating the applicability of the Fourteenth Amendment's equal protection clause. However, in the case at bar plaintiffs have specifically and unqualifiedly abandoned any claim under the Fourteenth Amendment.
Additionally, plaintiffs urge this court to adopt Mr. Justice Jackson's reasoning in his dissenting opinion in Everson in which he said he could see no reason for denying benefits to children attending profit-making schools if the law's objective was to aid all children. He was of the opinion that only children attending public or private Catholic schools were aided and that children "are not allowed to be aided if they attend private secular schools or private religious schools of other faiths." Id. 330 U.S., at p. 21, 67 S.Ct., at 514.
This court is respectfully constrained to question the accuracy of any such conclusion with respect to the present case for, as demonstrated above, there are many New Jersey children attending private secular schools and private non-Catholic parochial schools who are participating in the benefits of N.J.S. 18A:39-1.
As defendants point out, there are several other exclusionary aspects of the statute; no child who attends a private school, profit or non-profit, is entitled to transportation if he lives (a) within 2 miles of the school and is in an elementary grade; (b) within 2.5 miles of the school and is in a secondary grade; (c) more than 20 miles from the school regardless of grade level; (d) in a district which provides no transportation for its public school students; (e) in a district which only transports handicapped children pursuant to N.J.S. 18A:46-23; (f) in a district which only provides transportation to children attending public vocational school, or (g) at such a distance that it would cost in excess of $150 to transport him to school.
*490 But for one to contend that these exclusions establish an improper legislative intent within the comprehension of the First Amendment would be clearly erroneous. It does not follow that because the Legislature did not provide transportation for all students that it intended the schools and not the pupils to be the beneficiaries of the statute.
By the same reasoning, the exclusion of students attending private schools outside the State does not demonstrate the Legislature's concern with schools rather than students. New Jersey transports its public school students only within the State. The thrust of the law is portal-to-portal for safety reasons. It may have been this fact alone which prompted the exclusion and also no transportation to state lines. (It might be pointed out that there is no reason to believe that the great majority of out-of-state private schools attended by our students are not parochial schools. While the court was presented with no evidence in this regard, it was stipulated that over 91% of the private school students in the United States attend schools operated under the auspices of the Roman Catholic Church.)
The court finds that plaintiffs have failed to establish that the purpose of N.J.S. 18A:39-1 is the advancement of religion, in contravention of the First Amendment. The court further concludes that the exclusion of children attending the few private, profit-making schools and out-of-state schools from the benefits of N.J.S. 18A:39-1 was a valid and proper exercise of legislative discretion and gives rise to no inference that as a result of this de minimis exclusion the Legislature has evinced an intention to aid sectarian schools.
Plaintiffs also argue that the primary purpose and effect of the statute is the advancement of religion. It is apparent that the primary effect of the statute involved in Everson was to benefit the student recipients of the transportation aid. See Abington School Dist. v. Schempp, supra. Therefore, the primary effect of the current statute can only be the same unless rendered otherwise by the differences between *491 the statutes already alluded to. Plaintiffs contend that while private school students were given equal benefits under the prior law by virtue of the fact that they were bussed along established public school routes, these students now may travel special routes to private schools and hence are being given greater benefits and opportunities and can attend any schools of their choice within 20 miles. The benefit being bestowed on the students by the State, however, is not a bus ride, per se; it is the transportation to and from their schools. Special bus routes may be required in order to confer equal benefit on students since not all private schools are located on these public school lines, which, of course, are set with respect to the locations of the public schools. In any event, I cannot conceive that the primary purpose of benefiting the students, found in Everson, has been altered by the adoption of different bus routes.
Plaintiffs have submitted to the court the New Jersey State Department of Education report on school bus accidents in the State of New Jersey for the period July 1, 1962 through June 30, 1967. It is their position that the statistics in the report cast some doubt on the assumption that school busses provide a safe method of transportation for children. However, the figures for that five-year period show that an average of 350,000 students were transported to and from school by bus each year; that a total of 270,000,000 miles were traveled, and yet less than 73 students received injuries due to school bus accidents. While the court was not supplied with any data against which to compare or assess these figures, it seems unlikely that school bus transportation is as dangerous as other means of transportation. See e.g. Rhoades, supra, 226 A.2d 53, 57.
In any event, plaintiffs misconceive the "child benefit theory" if they construe it as simply involving the safety of children in traveling to and from school. The benefit involved also encompasses convenience of access to school and the assurance of their arriving at school.
*492 Everson made it perfectly clear that the transportation of students to parochial schools serves a public purpose. 330 U.S., at p. 7, 67 S.Ct. 504, 91 L.Ed. 711; Cochran v. Louisiana State Board of Education, 281 U.S. 370, 50 S.Ct. 335, 74 L.Ed. 913 (1930). Then, too, under N.J.S. 18A:39-1 no nonpublic school child can be transported unless the school district in which he resides is transporting public school children. It is obvious, therefore, that the law does not primarily benefit parochial school students.
The constitutionality of N.J.S.A. 18:14-8 was challenged as recently as 1967. See Fox v. Board of Education of West Milford Tp., 93 N.J. Super. 544 (Law Div. 1967), where defendant board of education contracted for the transportation of parochial school students along special bus routes. The court there held the contract invalid as being beyond the scope of the statute which provided for the bussing of private school students along established public school bus routes. However, Judge Larner did not find the statute to be unconstitutional. Concerning the effect of the establishment of separate bus routes for parochial schools on the constitutionality question, he stated:
"And the mere fact that the contracts in West Milford cover routes established specifically for parochial school children and involve payments to an independent contractor cannot serve as a distinguishing springboard to avoid the binding effect of Everson on the broad constitutional issue. I must therefore conclude that the legislation contained in N.J.S.A. 18:14-8 and the bus transportation contracts do not violate the First Amendment of the Federal Constitution." (at p. 558)
While the decision in Fox is not necessarily binding on this court, I believe it to be correct.
Under N.J.S. 18A:39-1, students attending private schools may receive transportation up to 20 miles each way. While this distance in many instances is greater than that to which public school students are entitled, since they must attend public schools in the district in which they reside, *493 this fact has no significance with respect to the First Amendment question. It was stipulated by plaintiffs at trial that their attack on the constitutionality of N.J.S. 18A:39-1 was directed exclusively and solely to the alleged contravention of the First Amendment's mandate and was not predicated on any theory or concept of discrimination under the Fourteenth Amendment.
It is further contended by plaintiffs that the providing of transportation to parochial school students will encourage students to attend these schools who otherwise would not. But the fact that some children may attend parochial schools who might not otherwise do so does not lend substance to plaintiffs' claim that N.J.S. 18A:39-1 advances religion. Mr. Justice Black said in Everson:
"It is undoubtedly true that children are helped to get to church schools. There is even a possibility that some of the children might not be sent to the church schools if the parents were compelled to pay their children's bus fares out of their own pockets when transportation to a public school would have been paid for by the State." (330 U.S., at p. 17, 67 S.Ct., at p. 512.)
This language was quoted in pertinent part with approval by the United States Supreme Court in Allen, supra; 392 U.S., at p. 242, 88 S.Ct. 1923, 20 L.Ed.2d 1060 and Everson disposed of this contention, as observed by Mr. Justice Frankfurter in McGowan v. State of Maryland, 336 U.S. 420, 467, 81 S.Ct. 1101, 1153, 6 L.Ed.2d 393 (1961).
It has not been demonstrated to this court that the introduction of special bus routes and a maximum assistance of $150. can or does alter the primary purpose of the transportation legislation or embodies any religious test upon the granting of transportation benefits.
For the reasons expressed, it is this court's conclusion that plaintiffs' contentions that N.J.S. 18A:39-1 violates the establishment clause of the First Amendment to the United States Constitution is without merit, and summary judgment dismissing the complaint should be entered in favor of the defendants.
NOTES
[1] Prior to its amendment by L. 1968, c. 29, N.J.S.A. 18A:39-1 did not provide for a maximum per pupil expenditure.