104 N.J. Super. 76 (1968)
248 A.2d 564
THE BOARD OF EDUCATION OF THE BOROUGH OF WOODBURY HEIGHTS, PLAINTIFF,
v.
GATEWAY REGIONAL HIGH SCHOOL DISTRICT, J. HARVEY SHUE, SUPERINTENDENT OF SCHOOLS FOR GLOUCESTER COUNTY, AND DR. CARL L. MARBURGER, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 19, 1968.
*77 Messrs. Falciani, Cotton & Chell (Mr. Eugene P. Chell, appearing), for plaintiff.
Messrs. Hannold & Hannold (Mr. Harold W. Hannold appearing), for defendant Gateway Regional High School District.
Mr. Arthur J. Sills, Attorney General of New Jersey (Mr. Stephen G. Weiss, Deputy Attorney General, appearing), for defendants, J. Harvey Shue and Dr. Carl L. Marburger.
BROWN, R. COOPER, J.S.C.
Plaintiff seeks a declaratory judgment construing the meaning and legal effect, as to it, of L. 1967, c. 74, since amended by L. 1968, c. 29, and now known as N.J.S. 18A:39-1, et seq. Plaintiff also seeks a determination as to whether it shall be obligated to pay Gateway Regional High School District (hereinafter "Gateway") for transporting nonpublic school students who live within the Borough of Woodbury Heights and who attend private, nonprofit schools from kindergarten through sixth grade and also from grades seven through twelve, to such schools as are not more than 20 miles from the residence of such pupils.
The facts are not disputed and all parties have moved for summary judgments.
*78 Defendant Gateway is a regional junior high school and a high school district composed of students from grades 7 through 12 from the Boroughs of Woodbury Heights, Wenonah, Westville and National Park, all in Gloucester County, New Jersey.
Plaintiff (hereinafter "Woodbury Heights") does not now, nor has it ever, transported or paid for the transportation of any students living within its jurisdiction to any school within or without its jurisdiction with the exception of providing certain transportation under R.S. 18:14-9. When the voters in Woodbury Heights on June 28, 1962 elected to become a part of Gateway the ballot stated specifically that the grades for which they were joining were 7 through 12, inclusive. Thereafter, and down to the present time, none of the pupils from grades 7 through 12, attending Gateway are afforded any public transportation, although that regional district does provide public transportation for its students from the other three municipalities.
On August 17, 1967 Woodbury Heights, having been made aware of the fact that Gateway intended to provide transportation for students within the jurisdiction of Woodbury Heights who attend private, nonprofit schools from kindergarten through grade 6, as well as those from grades 7 through 12, notified Gateway in writing that it would not accept the responsibility of reimbursing Gateway for such transportation, alleging that such transportation was not within the meaning of the statute referred to above. Gateway, nevertheless, is providing such transportation and does intend to charge Woodbury Heights therefor under the provisions of the above act.
On May 26, 1967 Governor Hughes signed into law Assembly Bill No. 21, as amended (L. 1967, c. 74). The bill expanded the then existing school transportation provisions in several substantial respects, beginning July 1, 1967. One portion pertained specifically to regional school district transportation. Thus, it was provided that:
*79 "Whenever any regional school district provides any transportation for pupils attending schools other than public schools pursuant to this act, said regional district shall assume responsibility for the transportation of all such pupils and the cost of such transportation for pupils below the grade level for which the regional was organized, shall be prorated by the regional district to the constituent districts on a per pupil basis after approval of such cost by the county superintendent of schools." N.J.S. 18A:39-1.
Woodbury Heights is the governing body of a school district composed of the Borough of Woodbury Heights. The district is a "Type II" school district (formerly "Chapter 7") organized for grades kindergarten through six.
There are residing in Woodbury Heights some nine children who attend private, nonprofit schools in grade levels below grade 7 and who are transported to school pursuant to N.J.S. 18A:39-1. These children, since they live "remote," are being transported to school by Gateway. In accordance with the requirement of N.J.S. 18A:39-1, the cost of such transportation is being prorated by the regional district among the constituent districts on a per pupil basis, and Gateway has billed Woodbury Heights for the costs so incurred. Woodbury Heights has challenged this billing, asserting that since no kindergarten to grade 6 public school pupils residing in Woodbury Heights are being transported, there was no responsibility placed upon it to pay for the transportation by Gateway of private, nonprofit school pupils in grade levels below that for which Gateway is organized (7 through 12).
Woodbury Heights, in its motion for summary judgment, advances the following four main arguments:
I. R.S. 18:14-8, as revised, is not intended to compel the Borough of Woodbury Heights to provide payment for transportation of private school students, grades kindergarten to 6, wherein it does not provide a like service for those attending public schools.
II. R.S. 18:14-8, as amended, if intended to compel the Borough of Woodbury Heights to provide payment for transportation *80 of private school students, grades kindergarten to 6, whereas it does not provide a like service for those attending public schools, violates the "equal protection" guarantee afforded plaintiff's constituent taxpayers under the Fourteenth Amendment of the United States Constitution.
III. R.S. 18:14-8, as amended, reviewed by standards established by recent United States Supreme Court decisions, contravenes the separation of Church and State, as guaranteed by the "establishment clause" of the First Amendment of the United States Constitution.
IV. By joining in the formation of Gateway, Woodbury Heights did not surrender its right to determine who, in its territorial jurisdiction should be transported to school in grade levels below 7.
All defendants contend that N.J.S. 18A:39-1 is valid and constitutional, and that Woodbury Heights is, by its terms, required to pay its pro rata share of costs incurred by Gateway in transporting the children in question to private, nonprofit schools in grade levels below 7.
The complaint in this action does not specifically raise any issues of constitutional dimension. Indeed, it appears to allege only that N.J.S. 18A:39-1 simply does not require Woodbury Heights to pay any sums for the transportation by Gateway of kindergarten through grade 6, private, nonprofit students residing in Woodbury Heights. Nevertheless, Woodbury Heights' brief is primarily devoted to a discussion of federal constitutional issues. Defendants contend that plaintiff, being a local school board, is without standing to impugn the constitutionality of the act.
A brief statutory history of this law may prove helpful in understanding and interpreting the intention of the Legislature.
The earliest pupil transportation law in New Jersey was enacted in 1894. See L. 1894, c. 335, § 22. It vested discretion in local boards of education to provide transportation to public school for children living remote and to levy a special tax for that purpose.
*81 In 1900 the law was amended to provide as follows:
"Whenever in any school district there shall be children living remote from any school house, the board of education of such district may make rules and contracts for the transportation of such children to and from school." L. 1900, c. 96, § 118.
The school transportation law remained in the above form, except for minor changes, until 1941.
In the interim, a substantial question was raised as to whether local school boards were required (rather than simply permitted) to transport to public school any child living remote therefrom. Prior to 1907, N.J.S.A. 18:11-1 (now N.J.S. 18A:33-1) provided that "each school district shall provide suitable school facilities and accommodations for all children residing in the district and desiring to attend the public schools therein." In Board of Education of Frelinghuysen Tp. v. Atwood, 73 N.J.L. 315 (Sup. Ct. 1906), affirmed 74 N.J.L. 638 (E. & A. 1906), the court held that a board of education was under no statutory obligation to provide for the transportation of public school children. In 1907 N.J.S.A. 18:11-1 was amended with the term "suitable school facilities" broadened so as to expressly include "convenience of access to the public schools." L. 1907, c. 123 § 1. Thus, N.J.S.A. 18:11-1 provided as follows:
"Each school district shall provide suitable school facilities and accommodations for all children who reside in the district and desire to attend the public schools therein. Such facilities and accommodations shall include proper school buildings, together with furniture and equipment, convenience of access thereto, and course of study suited to the ages and attainments of all pupils between the ages of five and twenty years. Such facilities and accommodations may be provided either in schools within the district convenient of access to the pupils, or as provided in sections 18:14-5 to 18:14-9 of this title."
The Legislature specifically stated then that each school district "shall" provide suitable school facilities and accommodations for all children who wish to attend public school *82 in the district and that such facilities and accommodations "shall include * * * convenience of access thereto." Thus, in the discharge of its mandatory obligation to provide "convenience of access" a board of education was henceforth required to provide free transportation to public school children living remote from the schoolhouse. See Board of Education of West Amwell Tp. in Hunterdon County v. State Board of Education, 5 N.J. Misc. 152 (Sup. Ct. 1927).
In 1941 a most significant change was made in N.J.S.A. 18:14-8. For the first time, transportation benefits were extended to children attending nonpublic school. The spirited public reaction created by the 1941 amendment culminated in the landmark case of Everson v. Board of Education of Ewing Tp., 133 N.J.L. 350 (E. & A. 1945) affirmed 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), holding that the 1941 amendment to N.J.S.A. 18:14-8 did not transgress the First Amendment of the United States Constitution. As recently noted in Fox v. Board of Education, West Milford Tp., 93 N.J. Super. 544 (Law Div. 1967), the framers of our 1947 Constitution subsequently incorporated the Everson principles into our fundamental law. See N.J. Const., Art. VIII, § IV, par. 3; Fox v. Board of Education, West Milford Tp., supra, at pp 558-559.
In Board of Education, Cent'l Reg'l High School District of Ocean County v. State Board of Education, 27 N.J. 76 (1958), the court held that under N.J.S.A. 18:14-8 a regional high school district had the power to transport children to parochial school even if they were in grade levels below that for which the regional district was created. Such transportation, of course, had to be along the established bus routes under N.J.S.A. 18:14-8.
In the Fox case, supra, the principal question raised was simply whether a local school board had discretionary power under N.J.S.A. 18:14-8 to transport children to nonpublic school along independent routes. The court's opinion disposed of that issue in the negative, upon the basis that it *83 saw no authority for such discretion in the existing legislation. 93 N.J. Super., at pp. 565-566.
L. 1967, c. 74 was introduced in original form as Assembly Bill No. 21 (hereafter A-21) on January 30, 1967. A-21 did not specifically include regional school districts by name. On March 6, 1967 the Assembly Committee adopted a substitute bill which clearly spells out the intention to include children living within any regional school district. On April 5 and 6 public hearings were conducted on the proposed bill. Woodbury Heights refers in its brief, and apparently relies upon, certain dialogue occurring at the public hearings. The subject of that discussion was whether a school district like Trenton, which bussed no public school students, would be obliged to bus nonpublic school students if the bill became law. Some thought that the amended bill so provided, as did many parents of pupils in parochial schools. It did not. Subsequently, the bill was amended before passage. The Committee Substitute bill under consideration at the time of the public hearings was not chapter 74 as passed in final form. On May 1, 1967 A-21 was passed by the Senate in further amended form. A comparison of chapter 74, with A-21 reveals that in final form it provided that whenever any regional school district provides any transportation for pupils attending nonpublic school, the district was to assume responsibility for transporting all such pupils, and that the cost of such transportation for pupils below the grade level for which the regional district was organized was to be prorated to the constituent districts on a per pupil basis. This language did not appear in the original bill.
As noted heretofore, the Central Regional High School case (27 N.J. 76) held that a regional school board could transport pupils to nonpublic school (along established routes) even if they were in grade levels below that for which the regional district was organized. In passing the 1967 amendment the Legislature saw fit to set forth that inherent power expressly. Plaintiff would have this court unilaterally *84 amend the statute and substitute exactly the opposite of what the Legislature has mandated in clear terms. Courts do not exercise the function of the Legislature. See Bendler v. Bendler, 3 N.J. 161 (1949).
In essence, then, all that the Legislature has done in N.J.S. 18A:39-1 is to expand the scope of its predecessor by effectuating legislatively what the court refused to do judicially in the Fox case. No longer need private, nonprofit school pupils living remote have to depend upon established public school bus routes in order to be entitled to transportation to school. Now, so long as any public school pupil living remote is transported by a school district, including a regional school district  except handicapped, vocational or technical school students  all nonpublic school pupils similarly situated are also to be transported. The Legislature not only drew no distinction based upon grade levels, it specifically mandated that they were irrelevant.
Simply stated, there are children residing in the territorial jurisdiction of Gateway who live remote from public school. Since they attend grades 7 through 12, they must, by law, be transported. Some attend grades kindergarten through 6. They, too, must by law, be transported. This requirement existed before enactment of the 1967 amendment and was continued. There also reside in the constituent districts of Gateway, including Woodbury Heights, children living remote from nonpublic school. Before enactment of the 1967 amendment they, too, had to be transported, but only along established public school bus routes. Under the Central Regional decision it mattered not that they were in grades below 7 through 12, for, as Justice Jacobs made quite clear, regardless of the grade level for which a regional school district is established pursuant to N.J.S.A. 18:8-1 et seq. (now N.J.S. 18A:13-1 et seq.), be it 7 to 12, 9 to 12, kindergarten to 12, or any other basis, the transportation statute relates to:
*85 "* * * any district, including a regional board in a regional district; and it does not recognize any distinction based on the grades being attended by the school children who are resident within the district. * * *" (27 N.J., at p. 80; emphasis added)
Woodbury Heights asserts that before passage of N.J.S. 18A:39-1, nonpublic school children residing in Woodbury Heights and who lived remote from school were not transported. That is true, but not because of any grade level distinction. These children were not transported simply because there was no established public school bus route for them to travel. As no public school children living in Woodbury Heights lived remote from school, there were no established public school routes. There are still no such routes in Woodbury Heights, but this now makes no difference because the Legislature has eliminated that limiting requirement.
Accordingly, viewed strictly as a matter of statutory interpretation, and in light of its antecedents and judicial expositions pertaining thereto, the present school bus law, N.J.S. 18A:39-1, manifestly requires that Gateway transport the children living in Woodbury Heights and who attend grades below 7 in nonpublic, nonprofit schools located remote from their places of residence.
Although not specifically alleged in the complaint, Woodbury Heights maintains that if N.J.S. 18A:39-1 is to be construed as defendants insist, and not judicially amended, then it must be deemed violative of the Equal Protection Clause of the Fourteenth Amendment. This contention is predicated upon plaintiff's belief that the statute provides a benefit, payable from public funds, to private school pupils to the exclusion of public school pupils similarly situated. If the statute did so provide its constitutionality might be suspect. However, since it does not, no equal protection issue exists on this score.
N.J.S. 18A:39-1 clearly treats all similarly situated pupils equally. The public school students below grade 7 who reside in Woodbury Heights are in a different class from *86 some of their nonpublic school peers; they do not live remote from their schools. N.J.S. 18A:39-1, like its progenitor N.J.S.A. 18:14-8, is predicated essentially upon a remoteness criteria. No child (other than handicapped), either before or after enactment of chapter 74, could compel expenditure of public funds to transport him to school unless he lived remote therefrom. As recognized by the Everson case, New Jersey parents are required to send their children to school. See N.J.S. 18A:38-25 et seq. They are free, if they so choose, to provide their children with an education equivalent to that which may be obtained in a public school. See State v. Massa, 95 N.J. Super. 382 (Cty. Ct. 1967). N.J.S. 18A:38-25. If a parent, as is his statutory prerogative, wants to send his child to nonpublic school, but the distance to the school requires considerable financial expenditures, then the State may legitimately, as part of a general program, pay for such costs. As noted by the court in Everson:
"It was to meet this mischief that the original statute authorizing the transportation of pupils living remote from the schools was enacted. The statutes looking to transportation became complementary to and in aid of the compulsory education statutes." (133 N.J.L., at p. 355).
In affirming, the United States Supreme Court iterated this thought, stating that all that N.J.S.A. 18:14-8 did, and properly so, was to assist all parents in getting their children safely and expeditiously to and from any accredited school. See 330 U.S., at p. 18, 67 S.Ct. 504.
Thus, the Legislature has deemed it to be an essential public purpose to benefit children living remote by guarding them against the hazards attendant upon travelling to school. The Legislature, beginning in 1941, did not choose to distinguish between whether a child had to travel to a public school or a nonpublic school, for a child is a child and the hazards of travel do not depend upon the school which the child attends. If a child lives remote from a nonpublic school, *87 and if in the regional school district in which he resides a public school child living remote from school is transported, then he, the nonpublic school child, must also be transported. No equal protection violation exists in these circumstances.
The remaining two issues raised by Woodbury Heights have no merit under existing law and will, therefore, not be further considered.
A judgment will be entered in accordance with these conclusions.