110 N.J. Super. 234 (1970)
265 A.2d 162
WEST MORRIS REGIONAL BOARD OF EDUCATION, IN THE COUNTY OF MORRIS; JO KOTULA; ROBERT T. OLSEN AND SUSAN BACCHUS, PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; CARL L. MARBURGER, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY; THE NEW JERSEY STATE BOARD OF EDUCATION; ABRAM A. VERMEULEN, DIRECTOR DIVISION OF BUDGET AND ACCOUNTING OF THE STATE OF NEW JERSEY; JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY; LESLIE P. REAR, SUPERINTENDENT OF SCHOOLS OF MORRIS COUNTY, NEW JERSEY; AND THE BOARD OF EDUCATION OF THE TOWNSHIP OF MORRIS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 28, 1970.
*237 Mr. Garret A. Hobart, IV, for plaintiffs (Messrs. Schenck, Price, Smith & King, attorneys).
Mrs. Virginia Long Annich, Deputy Attorney General, for defendants (Mr. Arthur J. Sills, Attorney General of New Jersey).
Mr. Arnold Chait, for defendant Morris Township Board of Education (Messrs. Vogel, Chait and Wacks, attorneys).
STAMLER, (JOSEPH H.), J.S.C.
Plaintiffs are West Morris Regional Board of Education, two duly elected members of that board and a taxpayer of the Township of Morris. Defendants are the Attorney General of New Jersey, the Commissioner of Education, the State Board of Education, the State Director of the Division of Budget and Accounting, the State Treasurer, the Superintendent of Schools of Morris County and the Morris Township Board of Education. Plaintiffs, seeking a declaratory judgment in accordance with the provisions of N.J.S.A. 2A:16-55 (Uniform Declaratory Judgment Act), assert that N.J.S.A. 18A:39-1 is unconstitutional. Briefly stated, this latter statute requires school districts, under appropriate circumstances, to transport children residing in the district to and from non-public, non-profit schools up to 20 miles distant from their place of residence.
Plaintiffs attack the validity of this statute, popularly referred to as the "new school busing law," on two basic grounds: (1) that the primary benefit of the legislation *238 flows to institutions operated by religious orders and, therefore, tends to establish religion contrary to the First Amendment of the United States Constitution, and (2) assuming, arguendo, that the primary purpose of the legislation is "child benefit" and does not result in an Establishment Clause violation, plaintiffs contend that the classification of children benefited by this statute is arbitrary and discriminatory, and consequently violates the Equal Protection provisions of the Fourteenth Amendment of the United States Constitution. Defendants take the position that the statute is valid in all respects.
The questioned statute permits boards of education to provide for the transportation to and from school of pupils who reside "remote from any schoolhouse" and includes therein transportation of both public school children and those who attend non-public, non-profit schools. However, the benefits of the statute for non-public school children only become operative if the district in the first instance transports public school children. This is the so-called "triggering" provision.
N.J.S.A. 18A:39-1 provides in pertinent part as follows:
Whenever in any district there are pupils residing remote from any schoolhouse, the board of education of the district may make rules and contracts for the transportation of such pupils to and from school, including the transportation of school pupils to and from school other than a public school, except such school as is operated for profit in whole or in part.
When any school district provides any transportation for public school pupils to and from school pursuant to this section, transportation shall be supplied to school pupils residing in such school district in going to and from any remote school other than a public school, not operated for profit in whole or in part, located within the State not more than 20 miles from the residence of the pupil provided the per pupil cost of the lowest bid received does not exceed $150.00 and if such bid shall exceed said cost then the parent, guardian or other person having legal custody of the pupil shall be eligible to receive said amount toward the cost of his transportation to a qualified school other than a public school, regardless of whether such transportation is along established public school routes.

* * * * * * * *
*239 This section shall not require school districts to provide any transportation to pupils attending a school other than a public school where the only transportation presently provided by said district is for school children transportated pursuant to chapter 46 of this Title [18A:46-1 et seq.] or for pupils transported to a vocational, tehnical or other public school offering a specialized program. Any transportation to a school, other than a public school, shall be pursuant to the same rules and regulations promulgated by the State Board as governs transportation to any public school. [Emphasis supplied]
If, in its discretion, the district determines that pupil transportation is advisable, then the district is reimbursed by the State to the extent of 75% of total cost "when the necessity for such transportation and the cost and method thereof have been approved by the county superintendent of the county in which the district paying the cost of such transportation is situate." N.J.S.A. 18A:58-7.
After the present suit was commenced Judge Lora decided the case of McCanna v. Sills, 103 N.J. Super. 480 (Ch. Div. 1968), which decision upheld the constitutionality of the "busing statute" against an asserted violation of the Establishment Clause. Thereafter, Judge R. Cooper Brown reached the same conclusion in Board of Education of Woodbury Heights v. Gateway Regional High School Dist., 104 N.J. Super. 76 (Law Div. 1968). No appeal was presented in either case. Plaintiffs here contend that these two trial court decisions are not binding upon this court, and this court is urged to reach the opposite result.
In the present case a stipulation of facts was filed and the parties brought the matter on for hearing on cross-motions for summary judgment. The stipulation in great part deals with legislative background. Judge Larner, in Fox v. Board of Education, 93 N.J. Super. 544 (Law Div. 1967), thoroughly detailed the history of the predecessor statute, R.S. 18:14-8, and what occurred thereafter in the Legislature leading up to the present statute is described in McCanna, supra, and Woodbury, supra. Repetition here of such legislative history would be superfluous.
*240 It is important to note that, effective July 19, 1968, an amendment to the new statute limited the per pupil cost to $150. Therefore, the details of dollar expenditures under the statute prior to this amendment, referred to at length in the stipulation, are not pertinent to the issues now raised.
It was stipulated by the parties that 75% of the funds advanced by each school district is being reimbursed by the State to the districts, whether each district paid for busing or found it more expedient to make direct payments of up to $150 to parents or guardians.
The stipulation also reveals that as of April 1967 there were 363,560 students enrolled in the non-public schools of New Jersey from kindergarten through grade 12. Of this total, 332,519 students were attending schools conducted under the auspices of the Roman Catholic Church. Thus, 91.4% of all the non-public school pupils attended schools affiliated with the Roman Catholic Church. As of April 1967, 88,782 students, 26.6% of the Roman Catholic school pupils, lived two miles or more from the school they attended. Of that number, 69,656 were transported to school by bus.
In the West Morris Regional High School District, for the 1967-68 school year, a total of 429 private school students were transported. Of that number, 346 students were transported to parochial schools. Defendant Morris Township Board of Education buses 519 pupils to non-public schools.
In contrast to West Morris Regional and Morris Township is the Town of Morristown. The stipulation acknowledges:
The Morristown Board of Education transported no public school students during the school year 1967-1968. It will transport no private and parochial students in the 1968-1969 school year because it provides no transportation for public school students.
It has been further stipulated that in many instances non-public school curricula include religious instruction and sectarian prayer.
*241 Attending to plaintiffs' first contention that the statute and its implementation violates the Establishment Clause of the First Amendment, this was fully argued in both McCanna, supra and Woodbury, supra, and this court adopts the conclusions of Judges Lora and Brown as they relate to the alleged Establishment Clause violation. In both cases the statute was held to be constitutional.
The second phase of plaintiffs' attack is that the statute constitutes a denial of equal protection of the law. It is urged that the classification of children to receive the statutory benefits is arbitrary and consequently in violation of the Fourteenth Amendment. This issue was specifically not raised in McCanna, supra. From the record before this court, it was not fully presented in Woodbury, supra.
Plaintiffs, addressing themselves to the equal protection question, state paradoxically that this statute does not go far enough, while at the same time, under the Establishment Clause argument, they say the statute goes too far. Plaintiffs assert that the operation of N.J.S.A. 18A:39-1 violates the Equal Protection Clause by reason of "under-inclusion." Plaintiffs cite six categories of school children who are excluded from transportation by reason of the operation of the act, to wit: (1) New Jersey residents attending out-of-state schools; (2) students outside the 20-mile radius; (3) pupils attending profit-making private schools; (4) pupils living in districts which only transport handicapped children pursuant to N.J.S.A. 18A:46-23; (5) students living in districts which only provide transportation to children attending public vocational schools, and (6) private or parochial non-profit school pupils residing in a district which provides no transportation to its public schools. Plaintiffs maintain that, by reason of these exclusions, the challenged act denies equal protection to pupils in the excluded categories. If the health, welfare and safety of all school children in the State are the underlying motives for the statute, plaintiffs ask why all school children should not *242 receive its protection and benefits, regardless of where they happen to live?
The United States Constitution, Amend. XIV, § 1 commands:
No State shall * * * deny to any person within its jurisdiction the equal protection of the laws.
Its application is directed to many areas of governmental activity, including primarily state legislation. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880).
While the judiciary is obligated to insure and protect constitutional rights, it must simultaneously acknowledge that the Legislature is a coordinate branch of government, and its views are entitled to measured attention and respect. It is well settled that legislative enactments are presumed to be constitutional, and courts will strive to reach that decisional result. See In re Village of Loch Arbour, 25 N.J. 258, 264 (1957); WHYY, Inc v. Borough of Glassboro, 50 N.J. 6, 13 (1967).
Judicial application of the equal protection clause acknowledges that states must regard some of its citizens under separate circumstances and special situations differently from others. In Wilson v. City of Long Branch, 27 N.J. 360, (1958), the court considered a statute alleged to be discriminatory as against private property owners and in favor of public utilities, contrary to the Fourteenth Amendment of the United States Constitution and Art. I, par. 5 of the New Jersey Constitution. There the court said:
But the Legislature may classify different types of property owners and treat them differently without offending the fundamental law. The requirement of equal protection is satisfied if all persons within a class reasonably selected are treated alike. And a classification is reasonable if it rests upon some ground of difference having a real and substantial relation to the basic object of the particular enactment or on some relevant consideration of public policy. If there is a reasonable distinction, there is no oppressive discrimination. The Legislature has a wide range of discretion in this area and distinctions will be presumed to rest upon a rational basis if *243 there be any conceivable state of facts which would afford reasonable support for them. Robson v. Rodriquez, 26 N.J. 517 (1958). [at 377]
The court then concluded that public utilities were necessary adjuncts of the public welfare and that the Legislature could treat them differently from private property owners.
In New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners, 48 N.J. 581 (1967), the court reiterated that equal protection does not mean that regulation of a particular profession must serve to regulate all or none. The court said:
The Legislature has wide discretion in the creation of or recognition of classes for different treatment. Equal protection does not require that all persons be dealt with identically. If there is some reasonable basis for the recognition of separate classes, and the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefor is arbitrary and unreasonable, and without relevance to the legislative goal. [at 601]
But the decision in the Planners case acknowledged that the judiciary has a duty to inquire into legislative acts and to intrude where separate treatment afforded by a statute represents invidious discrimination, or where different treatment has no rational basis in relation to the expressed purpose of the legislation. Planners makes a distinction between licensed professionals exempt from examination and those seeking to be licensed and made subject to examination. In Wilson, supra, the statutory classification involved a separation of public utilities and private property owners. In the case at bar the subjects of the classification under the "busing statute" are all school children in New Jersey.
Education in our State is essentially a state-supervised function, and this includes private schools as well as public, religious as well as secular. Our state school laws require *244 that all children between the ages of 6 and 16 attend school, public or private, or at least obtain equivalent instruction. N.J.S.A. 18A:38-25 et seq. (This is compulsory for all children, except those whose mental or physical condition would impose a burden upon the child. But in such cases, an opportunity for special schooling and transportation is available. N.J.S.A. 18A:46-1, 23.) The Legislature has established it to be a quasi-criminal offense for parents to ignore this mandate (N.J.S.A. 18A:38-31), and a juvenile offense for a child to be truant (N.J.S.A. 18A:38-27). However, parents do have a constitutional right to choose the type and character of education they feel is best suited for their children, be it secular or sectarian. Pierce v. Society of Sisters, etc., 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).
The first inquiry in the determination of a statute's constitutionality is as to the "purpose" of the particular measure. What are the objectives which the legislators might have had in enacting the statute? The essential integrity of the legislative arm of government is not to be impugned where a permissible purpose for the enactment is found. Although in Yick Wo. v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the questioned statute was held unconstitutional "because of unequal administration rather than unequal on its face," the Supreme Court did say, by way of dictum, that the Equal Protection Clause demanded not only equal application of a law according to its terms, but also "the protection of equal laws." (118 U.S., at 369, 6 S.Ct. 1064. This proposition has been frequently cited and quoted with approval; e.g., Hines v. Davidowitz, 312 U.S. 52, 69, 61 S.Ct. 399, 85 L.Ed. 581 (1941); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). It is abundantly clear that the purposes of the legislation and the legitimacy of legislative classifications are properly subject to judicial inquiry when considering equal protection arguments raised against a particular statute.
In Everson v. Board of Education, Ewing Tp., 133 N.J.L. 350 (E. & A. 1945), affirmed 330 U.S. 1, 67 S.Ct. 504, 91 *245 L.Ed. 711 (1947), it was held that extending transportation benefits to non-public school students did not transgress the Establishment Clause of the First Amendment. Both the New Jersey Court of Errors and Appeals and the United States Supreme Court based their conclusions on a finding that the primary purpose of the legislation was "child benefit." In Fox, supra, Judge Larner determined that the local school board did not have the power to transport children to non-public schools along independent routes, for such discretion was not authorized in the then existing legislation. 93 N.J. Super., at 565-566. The court there held that this result was ineluctable, notwithstanding the incorporation of the Everson doctrine into the New Jersey Constitution (Art. VIII, § IV, par. 3) and the acknowledgement in the Fox decision that no state funds were sought for or used in the proposed plans for transportation.
Judge Brown noted in Woodbury, supra, that the Legislature expanded the scope of the earlier legislation when it enacted the current statute, N.J.S.A. 18A:39-1. The revised law was intended to accomplish by legislative act that which Judge Larner had refused to do judicially in the Fox decision. Under the new statute, non-public school transportation is not limited to only established public school bus routes. Woodbury, supra, 104 N.J. Super. at 84.
The decision in Woodbury also dealt with the federal Equal Protection Clause as applied to N.J.S.A. 18A:39-1. Although not raised specifically by the complaint, the plaintiff in Woodbury did allego that the statute resulted in an unconstitutional classification of pupils with respect to the benefits available under the law. Judge Brown dismissed this attack and, under the facts there presented as outlined in his opinion, held that all similarly situated students were treated equally under the statute, according to a "remoteness criteria." 104 N.J. Super., at 85-86.
But this does not answer the equal protection arguments raised in the present case. Here, the contention, in part, is that payments are made from public funds to some private *246 school pupils who live remote from their schools to the exclusion of other private school pupils who also live remote and are similarly situated, except insofar as those pupils in the first group live in districts which happen to provide school transportation to their public school pupils, while those in the second category reside in districts which provide no such public school transportation. It would seem that the statute here in question leads to a paradoxical result, especially where, according to defendants, "the object of a school transportation law is to provide a general overall program for seeing that all children get to the school of their choice safely * * *". (Defendant's brief; emphasis supplied)
Plaintiffs, who assail the statute, must overcome the presumption of constitutionality of legislative classifications and must carry the heavy burden of showing such classifications to be arbitrary. In David v. Vesta Co., 45 N.J. 301 (1965), the court said:
The constitutionality of a legislative classification is presumed, and one who assails the classification must carry the burden of showing its arbitrariness. A classification having some reasonable basis is not invalid merely because it is not made with mathematical nicety or because in practice it results in some inequality. And the classification must be upheld if any set of facts can reasonably be conceived to support it. In short, the equal protection clause forbids only invidious discrimination. [Citing cases; at 315]
In Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966), the U.S. Supreme Court considered a New Jersey statute which required those imprisoned to pay for their trial transcripts, while permitting the guilty who were fortunate to receive only a fine, probation or suspended sentence in lieu of imprisonment not to be so obligated. In holding the statute to be unconstitutional Mr. Justice Stewart, speaking for the court, said:
The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. [Citing case] It also imposed a requirement of some rationality in the nature of the class singled out. To be sure, the constitutional demand *247 is not a demand that a statute necessarily apply equally to all persons. `The Constitution does not require things which are different in fact * * * to be treated in law as though they were the same.' [Citing case] Hence, legislation may impose special burdens upon defined classes in order to achieve permissible ends. But the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have `some relevance to the purpose for which the classification is made.' [Citing cases; at 308-309, 86 S.Ct. at 1499]
The equal protection issue in the present case resolves itself to whether or not the school children who fall under this statute's operation are treated differently, although they are similarly situated except as to where each happens to live within the State. If such children are subject to different classifications (and therefore, different benefits) by the statute, the question then becomes whether there is some relevant and constitutionally permissible purpose for which such classifications are made.
Brought into sharp focus is not only the Equal Protection Clause of the 14th Amendment, but also three vitally relevant sections of our New Jersey State Constitution. Art. I, par. 5 of the New Jersey Constitution contains an equal protection clause whose language differs from that in the United States Constitution. Although the phrases differ, this clause has been held to mean that equality of right is fundamental, as in the United States Constitution, and both clauses forbid "class legislation" which arbitrarily discriminates against some and favors others in like circumstances. Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949).
After describing the perpetual fund established for support of free public schools, its use is limited by the New Jersey Constitution as follows:
* * * the income thereof * * * shall be anually appropriated to the support of free public schools, for the equal benefit of all the people of the State; * * * [Art. VIII, § IV, par. 2; Emphasis supplied]
The New Jersey Constitution, Art. VIII, § IV, par. 3, further provides:
*248 The Legislature may, within reasonable limitations as to distance to be prescribed, provide for the transportation of children within the ages of five to eighteen years inclusive to and from any school. [Emphasis supplied]
Examining the "under-included" categories set forth in plaintiffs' argument, the first category of "New Jersey residents attending out-of-state schools" results only in the exclusion of students who are not "similarly situated" to those benefited. No proof has been offered by plaintiffs and the stipulation does not acknowledge the existence of any students within this classification. However, the court will judicially note that some residents send their children to far distant, truly remote areas out of State, so that they may attend non-public schools. Their "safety" in going to and from school is not advanced by the statute here in question, since they are excluded by its very terms. However, this limitation is found to be permissible.
"Students going to schools outside the 20 mile radius" (the second category) are not required to be included, for the New Jersey Constitution (Art. VIII, § IV, par. 3) specifically permits the determination of "reasonable limitations as to distance" by the Legislature with respect to school transportation. It is not for this court to usurp legislative discretion by recommending a greater or lesser distance. This exclusion does not offend either the New Jersey Constitution or the United States Constitution, because the legislative classification is found to be valid. Also, no showing was made before this court that any such exclusion results in real and invidious harm.
As to the third category of "pupils attending profit-making private schools," the record made by plaintiffs is also deficient. The court's attention has not been directed by the parties to a single "profit-making private school" operating in New Jersey, nor to any students attending such schools who are denied the benefits of this statute. The burden of proving that this category of alleged "under-inclusion" is truly existent and discriminatory has not been maintained.
*249 Categories (4) and (5) are composed of children who live in districts where only handicapped and vocational school children are to be transported. Here, the "triggering action" of the statute is unaffected by such transportation, in that transportation of handicapped or vocational school children does not necessitate the transportation of non-public school children. Such children are in specialized schools for specialized needs and obviously are not within the same classification as those who attend the required daily classes at regular elementary and secondary schools in our State, be they public or parochial. Therefore, these two cases of classifications which allegedly result in "under-inclusion" are held to be constitutionally valid.
The troublesome category is the sixth: "private or parochial non-profit school pupils residing in districts which provide no transportation to their public school pupils." Here, plaintiffs' contentions as to "under-inclusion" are supported by ample proofs in the stipulation.
For example, Morris Township and Morristown are divided in one area by South Street. Morris Township has determined, in its discretion, to transport public school children, and therefore it must provide (subject to statutory limitations) for non-public school children who reside in the district but who go to and from non-public schools outside the district. In contrast, Morristown does not provide any transportation for public school students, and therefore it need not under the statute provide for non-public school students. It is obvious that non-public school students might receive transportation under the statute's terms in one instance, while being denied such aid in a second instance, depending on which side of the same street their families happen to reside! Such geographical division is not unique in our State. For example, Millburn and Summit are separated by a single roadway, and Millburn has opted to transport public school students while Summit has not. In like manner are Verona and West Orange, and other examples are apparent.
*250 If students A and B reside as neighbors in Morris Township and students C and D live directly across the street in Morristown, the inequality of treatment will become apparent when hypothetical situations as to schools attended are examined. If A and C are pupils at Newark Academy (secular) and B and D attend St. Benedicts Academy or Delbarton School (parochial, when the description is used loosely), A and B will be transported whereas C and D will not. Morristown cannot under this statute be obligated to transport non-public school students (pupils C and D) if in its discretion it has determined that transportation of public school students is unnecessary. Nor can this court question the need or obligate Morristown to expend moneys for busing "public school students," so that pupils C and D can receive treatment equal to pupils A and B. Morristown and Morris Township, each with its separate municipal problems, are respectively entitled by statute to use discretion in determining the need to provide transportation for public school children.
What cannot be ignored is the contribution of state funds (75% of cost) to A and B and not to C and D, who may be equally, if not more, in need of the assistance compared to A and B. To all in the position of A and B there is annually paid, albeit indirectly, up to $150 per pupil, of which up to $112.50 comes from a special, limited use trust fund. N.J. Const., Art. VIII, § IV, par. 2. C and D and others similarly situated receive nothing towards their school transportation. If the primary purpose of the statute is "child benefit and safety," as the State here contends and as agreed by the United States Supreme Court in Everson, supra, and as reiterated in the New Jersey Constitution (Art. VIII, § IV, par. 3), are not C and D deprived of the equal protection guaranteed to them under both the United States Constitution and our own New Jersey Constitution?
Both N.J.S.A. 18A:39-1 and 18A:58-7 must be examined as to the effect of their interaction, one upon the other. If it is fairly concluded that, in the present case, *251 certain school children are similarly situated except for geographical or municipal boundary lines, the extension of benefits or rights to some results, at least by implication if not by operation, in an unconstitutional denial to others, especially in view of the use of state funds to support such benefits.
In Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), the court, in dealing with restrictive racial covenants, said
Equal protection of the laws is not achieved through indiscriminate impositions of unequalities. [at 22, 68 S.Ct. at 846]
Cannot the same be said of the indiscriminate granting of school transportation benefits? Unless a truly relevant distinction can be made between those school children benefited and those deprived under this statute, school children similarly situated should not be treated differently. The geographical accident of the location of their homes in a non-busing community is not a relevant distinction on which statutory classifications can be validly established. The New Jersey Constitution permits the Legislature, "within reasonable limitations as to distance," to provide for the transportation of children within the ages of 5 to 18 years, inclusive to and from any school. Once having availed itself of this permission in the Constitution, the Legislature's power of statutory classification or discrimination is limited to "distance" only and does not extend to excluding or including any particular children, their places of residence or particular schools, unless such classification was within the permissible "distance zone" regulatory power.
Whatever is right or wrong for A and B must be right or wrong for C and D, unless some relevant difference can be shown to exist between A and B on the one hand and C and D on the other to justify different treatment under the statute.
It is concluded that the equal protection provisions of the United States Constitution are violated. Although not raised by counsel, but brought sharply into focus by Judge Larner's opinion in Fox, supra, this court must also consider the *252 statute and its relation to the New Jersey Constitution, Art. VIII, § IV, pars. 2 and 3. Judge Larner concluded in Fox that, under the statute which was the predecessor of the one here in question, public funds could not be used to establish and pay for bus routes designed solely for non-public school children. The statute under consideration in Fox spoke of an "established school route" as the statutory "triggering" provision. The statute sub judice was obviously intended to over-ride the decision by Judge Larner. However, it still must be examined with constitutional limitations in view.
Here, unlike the statute considered in Fox, state school funds are to be used for the transportation authorized by the current statute. School funds must be used "for the equal benefit of all the people of the State." N.J. Const., Art. VIII, § IV, par. 2. It is obvious that the 75% contribution from state funds to some non-public school students, and not to others similarly situated, violates this section. The burden should be on the defendants to show not only that the objectives of the statute could not be attained by measures which did not discriminate, but also that a solution which partially solves a public problem outweighs any resulting harm that will be suffered by certain excluded private parties. Once state monies have been expended for a special class (here, private school students attending schools outside the district who reside in districts where public school students are transported) to the exclusion of another class (here, private school students attending the same schools outside the district who reside in districts where no public school students are transported), the classification becomes suspect of constitutional invalidity.
It cannot be found here that special benefits to children who happen to be included under the present statute are based upon special needs. Hereinabove, it was noted that the Morristown-Morris Township geographical relationship was not unique in this State. Judicial notice can be taken of the fact that, for the most part in our State, the highly compact urban areas do not provide for public school pupil transportation *253 and therefore do not have to provide transportation to non-public school children. The parish school children in the elementary grades living in most urban areas would advance to sectarian high schools located outside the parish area, and no transportation would be provided. It is recognized that these compact urban communities are characterized by a below-average economic level. If the statute in question makes its classification on economic need, it is not supported by any facts before this court. As a matter of fact, the statute as now constituted operates to deprive just those non-public school children who are most in need of financial assistance (e.g., urban area dwellers).
The suburban communities, where public school transportation is more common, may be characterized as being above the general economic level of the urban areas. It would seem apparent that many of those who can afford to live in "suburbia" (where distance between homes on large lots meets the "remote" criterion) are in a better economic position to finance their children's private school transportation than are most residents of the cities today. Since most cities do little school busing because of the close proximity of "neighborhood schools," it is the poorer non-public school children against whom this statute serves to discriminate. The result is unconstitutional under the present statutory scheme notwithstanding that the Legislature may have had the best intentions.
If this statute is based upon the laudable legislative purpose of seeing that all children get to the school of their choice safely, what makes C and D of Morristown or a child in Newark more capable of walking the streets with safety than the Morris Township or Millburn children who are transported at public expense to non-public schools and whose parents would be better able for the most part to afford the transportation than the Morristown or Newark child's parents?
The statute in question, N.J.S.A. 18A:39-1, is declared to be violative of the Fourteenth Amendment of the United *254 States Constitution. It is also concluded that the statute violates the New Jersey Constitution, Art. VIII, § IV, par. 3, wherein the statute extends its discriminatory features beyond the permitted "reasonable limitations as to distance." The statute, by discriminating between children and using public funds inequitably, also offends the constitutional proscription that the funds, or income therefrom, shall be used "for the equal benefit of all the people of the State." N.J. Const. Art. VIII, § IV, par. 2.